## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:10-cv-00205-MR
## [Criminal Case No. 1:07-cr-00056-MR-1]

| | | |
|---|---|---|
| REGINALD DEWAYNE JEFFRIES, | ) ) ) | |
| Petitioner, | ) ) | **MEMORANDUM OF** |
| vs. | ) ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1]; Petitioner's Partial Motion for Summary Judgment [Doc. 70]; Petitioner's Motion to Appoint Counsel [Doc. 71]; Petitioner's Motion for Leave to File Motions to Reconsider and Motion to Recuse [Doc. 73]; Petitioner's Motion for Leave of Court to file for a "Prompt Hearing" [Doc. 77]; Petitioner's Supplemental Motion to Vacate [Doc. 78]; Petitioner's Motion for Permission to File [Doc. 80]; Petitioner's Motion for Leave to Amend [Doc. 86]; and the Government's Motion for Extension of Time to File [Doc. 88].

## PROCEDURAL HISTORY

Petitioner Reginald Jeffries was indicted on June 4, 2007, and charged with possession with intent to distribute at least 25 grams of powder cocaine, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and using and carrying a firearm during and in relation to, or possession in furtherance of, a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). [Criminal Case No. 1:07-cr-00056, Doc. 1: Indictment]. The grand jury charged that Petitioner committed each of these offenses on March 27, 2007. [Id.].

Two months after Petitioner was indicted, the Government filed an Information pursuant to 21 U.S.C. § 851, notifying the Court and Petitioner that the Government intended to seek an enhancement of Petitioner's sentence based on his two prior felony drug-trafficking convictions, specifically his convictions on April 19, 2007, and on January 8, 2001, for possession with intent to distribute a Schedule II controlled substance. [Id., Doc. 11: Section 851 Information]. A few days later, the Government filed a Notice informing Petitioner and the Court that the Government believed that Petitioner qualified as an armed career criminal under 18 U.S.C. § 924(e), warranting an enhanced sentence. [Id., Doc. 12, ACCA Notice].

The next day, two weeks before Petitioner's trial, the Government filed a Notice of its intent to offer prior bad acts evidence under Federal Rule of Evidence 404(b). [Id., Doc.13: Rule 404(b) Notice]. In particular, the Government noted that Petitioner had illegally possessed controlled substances on numerous occasions known to law enforcement, including an incident in July 2006, when officers purchased powder cocaine from Petitioner; an incident on March 17, 2007, when Petitioner possessed about one ounce of crack cocaine when he encountered law enforcement; and an incident the next day, on March 18, 2007, when Petitioner possessed crack cocaine when he again encountered law enforcement. [Id.]. The Government also noted that it would seek to introduce evidence that Petitioner had been banned from public housing projects by the Asheville Housing Authority but had nevertheless been encountered by law enforcement at such locations on many occasions since having been banned. [Id.].

On August 28, 2007, about a week before Petitioner's trial, Petitioner's trial counsel, Janna D. Allison, filed a motion for a psychiatric evaluation, stating that Petitioner "ha[d] told counsel that he received disability benefits in the past for mental illness" and "had also advised counsel that he received inpatient treatment for mental illness in the past,"

such that it was "necessary that [Petitioner] be evaluated to determine present competency as well as culpability at the time of the commission of the offenses alleged in the indictment." [Id., Doc. 15: Mot. for Psych. Eval.]. Two days later, the Government filed a response in opposition to Petitioner's motion, arguing that the motion was untimely, and that counsel would have known of any relevant mental condition of Petitioner when she was appointed nearly two months earlier. [Id., Doc. 16 at 2: Gov't Resp. to Def. Mot. for Psych. Eval.]. The Government also opposed the request on the merits, noting that counsel had not presented any documentation to support the need for an evaluation and had stated only that Petitioner had claimed to have suffered from mental illness in the past. [Id. at 3-5].

Also, on August 31, 2007, just a few days before trial was to begin, Ms. Allison filed a motion to withdraw as counsel, stating that Petitioner "had requested that counsel file motions . . . which counsel deem[ed] frivolous"; that counsel had refused to file the requested motions; and that Petitioner had requested that counsel withdraw as counsel. [Id., Doc. 17: Mot. to Withdraw]. On the date trial was to begin, this Court denied Petitioner's motion for a psychiatric evaluation "for all the reasons stated by the Government." [Id., Doc. 18: Order].

Beginning September 4, 2007, Petitioner's case was tried before a jury, at the conclusion of which Petitioner was found guilty of the possession-with-intent-to-distribute offense and the felon-in-possession offense, as charged. [Id., Doc. 23: Jury Verdict]. Count Three was dismissed on the Government's motion at trial. [Doc. 32 at 1].

During the trial the Government presented evidence admitted pursuant to Rule 404(b) consisting of the following. In July 2006, an undercover Asheville police officer set up an undercover crack buy from Petitioner, using a prostitute as cover to contact Petitioner. [Id., Doc. 42 at 69-75: Trial Tr.]. Petitioner gave the officer four pieces of crack cocaine, but was not arrested at the time. [Id. at 73-74].

Next, on March 17, 2007, in the middle of the night, while responding to a report of shots fired, Asheville police officers encountered Petitioner at the Lee Walker Heights public housing complex from which he had been banned. [Id. at 8-10]. Petitioner was standing outside a car parked in the lot, and several people were sitting in that car. [Id. at 12-13]. When the officer patted down Petitioner he found marijuana, so he handcuffed Petitioner. The officer then spotted a McDonald's bag under or behind the car's tire, which turned out to contain crack cocaine. [Id. at 13-15]. Petitioner was not arrested. [Id. at 19].

The next evening, around seven o'clock on March 18, 2007, the same officer responded to the same complex to investigate claims of a fight.  [Id. at 20-21].  An eyewitness had stated there Petitioner was there and he had a gun in his hand.  [Id. at 21].  When the officer arrived, he again patted down Petitioner and found two grams of crack in Petitioner's pocket.  [Id. at 22- 23].  When he was sitting in the squad car after this discovery, Petitioner made a phone call during which he claimed that someone else had placed the crack in his pocket.  [Id. at 46].  Later, when Petitioner testified at trial, he said the same thing, but he never identified the person whom he claimed slipped the crack into his pocket.  [Id. at 130 ("Do you recall being in contact with anybody that would have just given you free cocaine?" "No."]. Petitioner was arrested but released on bond. [Id. at 25].

On March 27, 2007, the same officers responded to the same complex, again to investigate claims of a fight.  [Id. at 25-26].  This time, Petitioner fled as the officers approached.  [Id. at 27-31].  As Petitioner was fleeing, one of the officers saw Petitioner throw a bag of powder cocaine away from him.  [Id. at 33-34].  Other officers assisted the lead officer, and they scuffled with Petitioner.  [Id. at 35-38].  Petitioner resisted and, during the scuffle, a gun fell out of Petitioner's waistband; the officers were afraid

that he was trying to reach it.  [Id.]. Petitioner, when testifying, admitted

having had the loaded gun in his waistband, but he denied that he was

trying to get it during the scuffle.  [Id. at 133-34; 112-13].  Eventually, three

officers subdued Petitioner with two doses of mace.  [Id. at 37-38].  Officers

then secured the loaded gun, arrested Petitioner, and took him to the

hospital.  [Id. at 37-39, 41-42].  The baggie Petitioner had cast aside during

the chase contained more than 25 grams of cocaine powder.  [Id. at 39].

Petitioner testified in his own defense.  Petitioner flatly denied the

July 2006 undercover buy.  [Id. at 116].  With respect to the incident on

March 17, 2007, Petitioner claimed that the crack found in the McDonald's

bag was not his because he was not charged.  [Id. at 109].  As for the crack

found in his pocket on March 18, 2007, Petitioner claimed, as mentioned

above, that someone else had put the crack in his pocket.  [Id. at 110-11].

He admitted, however, that he was a crack user.  [Id. at 131].  With respect

to the charged incident, he denied throwing the cocaine during the chase

[Id. at 112 ("I disagree [with the officer's testimony], and he can't prove it.")],

but he admitted having the gun [Id. at 111].[1]

---

[1]  Petitioner stipulated that he was a convicted felon, [Id. at 100], and the evidence
established that the gun had traveled in interstate commerce, [Id. at 96-98].

At the commencement of Petitioner's trial, the Court inquired into counsel's motion to withdraw, and Petitioner responded that he and Ms. Allison had disagreed over "[n]umerous things," but that "the main disagreement was that [Petitioner] requested that she make a select prosecution claim in [his] favor, and she had some doubts about that." [Id., Doc. 41 at 5]. Petitioner stated further that Ms. Allison had failed to interview potential witnesses, had failed to investigate the case against him, and had failed to investigate the Government's witnesses. [Id.]. Petitioner stated, finally, that he had been offered a plea bargain, but he was "not sure if any counter-offer ha[d] been made." [Id.].

When asked about her representation of Petitioner up to the point of trial, Ms. Allison reported that she had met with Petitioner on numerous occasions since her appointment and that Petitioner had asked her to file a selective prosecution claim and a motion challenging the Court's jurisdiction but that she had declined to file those motions, judging them to be without merit. [Id. at 5-6]. Ms. Allison stated that the night before, Petitioner complained that she had not talked to any witnesses, and when Ms. Allison responded that Petitioner had not identified any witnesses for her to talk to, Petitioner responded that he "was going to let [her] take the ball and run with it and see where it went," as "it was [her] job to prepare

his case." [Id. at 6]. When asked about whether Petitioner had identified any witnesses who could testify on his behalf, Ms. Allison told the Court that Petitioner had given her a letter written to Gene Bell, the director of the Asheville Housing Authority, but Ms. Allison concluded that the information in the letter was irrelevant hearsay, but that it could be used on cross-examination. [Id. at 7].

The Court asked Ms. Allison whether she had done her best to represent Petitioner properly and Ms. Allison responded that she had, confirming that Petitioner had refused to cooperate but that she did not know of anything that she should or could have done to represent him better than she had. [Id. at 6-7]. With respect to a plea offer, Ms. Allison confirmed that a plea offer had been presented to Petitioner and reported that she had discussed the offer with Petitioner "on several occasions," but that he was not willing to accept the plea offer. [Id. at 7]. Following this colloquy, the Court denied the motion to withdraw, stating that it was filed close to trial and that, while Petitioner could choose to represent himself *pro se*, the Court would not appoint new counsel. [Id.]. The Court noted that it was not an attorney's responsibility to file frivolous motions or to call witnesses "who know nothing that would be helpful in the case." [Id. at 8].

In preparation for Petitioner's sentencing hearing, the probation office prepared a Presentence Report ("PSR"), in which the probation officer calculated an adjusted offense level of 30 based on the drug quantities, but also determined that Petitioner qualified as a career offender under U.S.S.G. § 4B1.1, which yielded as adjusted offense level of 34. [Id., Doc. 53 at 7: PSR]. In addition to the two drug-trafficking convictions noted in the Government's § 851 Notice, the probation officer in concluding that Petitioner is a career offender relied on Petitioner's prior convictions for three counts of felony second-degree kidnaping, for which he was sentenced to 27 to 42 months in prison; one count of felony common law robbery, for which he was sentenced to 16 to 20 months in prison; and one count of felony maintaining a place for controlled substances, for which he was sentenced to 10 to 12 months in prison. [Id.]. Based on a total offense level of 34[2] and a criminal history category of VI (based on Petitioner's criminal-history points and independent of his status as a career offender), the probation officer calculated an advisory Sentencing Guidelines range of imprisonment of between 262 and 327 months. [Id. at 23]. Finally, concerning one of the two prior convictions noticed in the

_____

[2] The adjusted offense level became the total offense level because there were no deductions.

Government's § 851 Notice, the probation officer noted in the PSR that Petitioner had appealed his April 19, 2007, conviction and that his appeal was then pending in the North Carolina Court of Appeals. [Id. at 15].

On January 28, 2008, this Court determined that the probation officer's calculation of the guideline range was correct and sentenced Petitioner to 264 months' imprisonment as to the drug-trafficking offense and to 120 months' imprisonment as to the felon-in-possession offense, with those terms to run concurrently. [Id., Doc. 32: Judgment]. Addressing Petitioner's prior convictions, as identified in the Government's § 851 Notice, the Court noted that Petitioner's 2007 conviction was then on appeal and disclaimed any reliance on this conviction in calculating the statutory range of imprisonment applicable to Petitioner's conviction under 21 U.S.C. §§ 841(b)(1)(C) and 851. [Id., Doc. 44 at 4: Sentencing Tr.]. Six months later, on August 5, 2008, the North Carolina Court of Appeals affirmed Petitioner's 2007 state court conviction and sentence of 13 to 16 months. State v. Jeffries, 191 N.C. App. 611, 664 S.E.2d 77 (2008).

Petitioner appealed the judgment of this Court, arguing on appeal that this Court erred in admitting evidence of uncharged offenses and prior bad acts under Rule 404(b) and that there was insufficient evidence to support the jury's finding that Petitioner possessed cocaine with the intent

to distribute it.  In particular, Petitioner argued on appeal that this Court improperly admitted evidence that Petitioner had been banned from Asheville Housing Authority properties, evidence that Petitioner possessed small amounts of crack cocaine on March 17 and 18, 2007, and evidence that Petitioner sold four rocks of crack cocaine to an undercover officer in July 2006.  The Fourth Circuit affirmed this Court's judgment on December 29, 2008, holding that this Court had properly admitted this prior bad acts evidence under Rule 404(b) and that "the Government provided substantial and convincing evidence that [Petitioner] was guilty of possession of cocaine with intent to distribute."  United States v. Jeffries, 304 Fed. App'x 229, 232 (4th Cir. 2008).

Petitioner filed his original motion to vacate his conviction and sentence on September 17, 2010, bringing various claims of ineffective assistance of trial counsel and for a claim of wrongful sentence enhancement under the Fourth Circuit Court of Appeals en banc decision in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011).  [Doc. 1].  The Government filed a response to Petitioner's motion and a motion to dismiss on March 8, 2011.  [Docs. 36, 37].  Although Petitioner initially argued that he was improperly considered a career offender because his prior convictions were not punishable by more than one year in prison, the

Government inadvertently failed to respond to this argument in its response.  Petitioner later amended his motion, without objection by the Government, to add a claim that his sentence was also improperly enhanced under 21 U.S.C. §§ 841(b)(1)(C) and 851, because his prior felony drug convictions were not punishable by more than one year in prison and were not, therefore, "felony drug offenses" for purposes of §§ 841 and 851, and a claim of ineffective assistance of counsel based on counsel's failure to argue these errors.  [Doc. 54].  In its response to these claims, filed on March 2, 2012, the Government agreed that Petitioner should receive sentencing relief based on his claim that his sentence was improperly enhanced under 21 U.S.C. §§ 841(b)(1)(C) and 851, but the Government objected to any relief based on Petitioner's having been sentenced as a career offender under U.S.S.G. § 4B1.1.  [Doc. 67].

On January 23, 2013, Petitioner filed, through counsel, a supplement to his motion to vacate, arguing that he is entitled to relief from his career-offender enhancement.  [Doc. 78].  On June 13, 2013, Petitioner filed a "Motion for Permission to File," in which Petitioner states that he seeks to file an amended claim of ineffective assistance of counsel.  [Doc. 80].  On November 12, 2013, Petitioner filed a second *pro se* motion to amend the

motion to vacate, again seeking to amend his ineffective assistance of counsel claim.  [Doc. 86].

On September 24, 2013, this Court ordered the Government to respond to the supplement to the motion to vacate by November 12, 2013. [Doc. 81].  On November 14, 2013, the Government filed its response [Doc. 87] and simultaneously moved for a two-day extension of this deadline, citing counsel's recent medical leave.  [Doc. 88].  For cause shown, the Court will allow the Government's motion for an extension of the deadline and thus the Government's response will be deemed to have been timely filed.

## STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## DISCUSSION

### A. Petitioner's Motion for Permission to File, Petitioner's Motion to Amend, Petitioner's Motion to Appoint Counsel, and Petitioner's Motion for Reconsideration

In a "Motion for Permission to File," filed on June 13, 2013, and in a motion for leave to amend, filed on November 12, 2013, Petitioner seeks to amend the petition to add a claim for ineffective assistance of counsel based on counsel's failure to investigate certain witnesses that would have allegedly shown that Petitioner is actually innocent of the crimes for which he was convicted. Petitioner points specifically to a potential witness named Sarena Lynch, whom Petitioner states would have provided an affidavit stating that

> the cocaine recovered by law enforcement and charged to defendant did not come from defendant, but rather law enforcement discovered the cocaine hidden in the general area outside in Lee Walker Heights Apartments; that unknown persons hide drugs in the outdoors in that neighborhood to avoid responsibility; and that Petitioner is not someone that Affiant can identify as a drug-dealer in her neighborhood.

[Doc. 86 at 2]. Petitioner correctly notes that he already filed two motions to amend to add the above ineffective assistance of counsel claim, and this Court denied the motions, first, as time-barred on January 24, 2011, and then again on February 6, 2012, because Petitioner did not first seek

permission from the Court to file the motion to amend.[3] <u>See</u> [Docs. 25; 64]. The instant motion for permission to file and the motion to amend are denied for the same reasons that Court denied Petitioner's prior motions to amend.

Furthermore, as to Petitioner's motion for permission to file, Petitioner contends that he should be allowed to amend the petition to add the ineffective assistance of counsel claim under the Supreme Court's decision in <u>McQuiggin v. Perkins</u>, in which the Supreme Court held that a petitioner may overcome the one-year statute of limitations for federal habeas petitions by showing that he is actually innocent of the crime for which he was convicted, which means that he must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find [Petitioner] guilty beyond a reasonable doubt." 569 U.S. __, 133 S. Ct. 1924, 1928 (2013). Notwithstanding the timeliness of Petitioner's motion, Petitioner simply fails to meet the burden required to show "actual innocence" under <u>Perkins</u>. Petitioner asserts that Ms. Lynch's would purportedly testify that she had never personally seen Petitioner dealing drugs in the Lee Walker

---

[3] Specifically, the Court denied the second motion to amend because Petitioner violated this Court's Order dated October 19, 2011, requiring Petitioner to seek permission before he filed additional motions. [Doc. 60]. This Court entered the Order dated October 19, 2011, due to Petitioner's filing of numerous, frivolous motions before the Court.

Heights complex and some other person *could* have hidden the bag. The evidence at trial, however, was that law enforcement *saw* Petitioner throw a bag of cocaine on the ground while fleeing from them. Therefore, Petitioner cannot show that, if Ms. Lynch's testimony had been presented to the jury, it is more likely than not that no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt. Petitioner testified on his own behalf at trial that the cocaine was not his. The jury obviously did not believe Petitioner's story. Even without considering the performance prong of <u>Strickland</u>, Petitioner has simply not shown that the proposed testimony by Ms. Lynch would have made a difference in the outcome of Petitioner's trial. Thus, Petitioner has not shown ineffective assistance of counsel. In sum, Petitioner's motion for permission to file and his motion to amend are both denied.

Next, as to Petitioner's motion to appoint counsel to assist Petitioner with his <u>Simmons</u> claims, this motion is denied as moot because this Court appointed the Federal Defenders of Western North Carolina to conduct a <u>Simmons</u> inquiry into Petitioner's claims, and the Federal Defender filed a supplement to the motion to vacate.

Finally, as to Petitioner's Motion for Leave to File Motions for Reconsideration and Motion to Recuse, Petitioner seeks to have this Court

vacate its earlier Order dated October 19, 2011, in which the Court prohibited Petitioner from filing most types of motions without first obtaining the Court's permission. Petitioner also seeks recusal of the undersigned judge from reviewing Petitioner's claims, arguing that the undersigned has accepted the merits of the Government's arguments without independent review and that the undersigned has "antagonized [Petitioner] for reasons that are either unreasonable or of no fault of Petitioner's." [Doc. 73 at 1]. Petitioner's motion for reconsideration and motion to recuse are both denied. First, Petitioner contends that this Court's October 19, 2011, Order denied him due process, but the Order did no such thing. Petitioner was not deprived of the right to have any of his motion adjudicated as a result of this Court's order, as the Court has considered each proposed motion filed by Petitioner.

As to Petitioner's motion to recuse, 28 U.S.C. § 455 governs disqualification of federal district court judges. In pertinent part, the statute provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding ....

Id.

In the Fourth Circuit, the standard outlined in subsection (a) is analyzed objectively by determining whether a reasonable person with knowledge of the relevant facts and circumstances might question the judge's impartiality.  See United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003).  The "reasonable person" is a "well-informed, thoughtful observer," who is not "hypersensitive or unduly suspicious."  Rosenberg v. Currie, No. 0:10–1555–DCN–PJG, 2010 WL 3891966, at *1 (D.S.C. Sept. 3, 2010) (quoting In re Mason, 916 F.2d 384, 386 (7th Cir. 1990)); see Cherry, 330 F.3d at 665 (quoting United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998)) ("A presiding judge is not, however, required to recuse himself simply because of 'unsupported, irrational or highly tenuous speculation.'").  With regard to subsection (b)(1), bias or prejudice must be proven by compelling evidence.  Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000).

Section 455 does not require the judge to accept as true all allegations by a moving party; rather, the judge must disqualify himself

upon a finding that the facts cast doubt on his impartiality regardless of how they come to his attention.  <u>Lindsey v. City of Beaufort</u>, 911 F. Supp. 962, 967 n.4 (D.S.C. 1995).  The requirement that a trial judge recuse himself under guidelines enunciated in 28 U.S.C. § 455 recognizes the importance of preserving a "fair and impartial tribunal [as] the basic guardian of all cherished notions of due process embodied in the Constitution of the United States."  <u>Id.</u> at 967 (citing <u>In re Murchison</u>, 349 U.S. 133 (1955)).  The motion to recuse must be based on bias that is extrajudicial or personal in nature, and must result in an opinion based on something other than what was learned from the judge's participation in the case.  <u>Id.</u>

Here, Petitioner has not met his burden of showing that recusal of the undersigned is appropriate.  Petitioner has presented nothing more than conclusory allegations that the undersigned is biased towards the Government's position in this case.

In sum, for the reasons stated herein, the Court denies the above motions by Petitioner.

## B.    Petitioner's Claims of Ineffective Assistance of Trial Counsel against Defense Counsel Allison

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of

counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### 1.  Petitioner's contention that Ms. Allison failed to investigate properly the July 2006 incident.

Petitioner first argues in his § 2255 motion that counsel was ineffective because she failed to investigate adequately the July 2006 incident, during which an undercover officer bought four rocks of crack cocaine from Petitioner.  Specifically, Petitioner argues that the attorney who defended him against state court charges stemming from that incident had investigated the charge and proved it false, but that Ms. Allison failed to obtain the information revealed through his investigation or to investigate for herself.  As support, Petitioner attaches to his § 2255 motion various pleadings filed by counsel representing him in the state court.

Petitioner's claim must fail.  On Petitioner's direct appeal the Court of Appeals addressed the possibility that this evidence of the July 2006 incident was admitted erroneously.  The Court held, however, that even if this Court had improperly admitted this evidence, "[i]n light of the considerable evidence of [Petitioner's] guilt, any prejudice suffered failed to affect the outcome of the proceedings." <u>Jeffries</u>, 304 Fed. App'x at 232. This holding precludes any argument by Petitioner that he would have been acquitted if his counsel had properly impeached the testimony of the officer who testified to this incident.  Any impeachment would have, at

most, undermined only the value of this testimony, not the value of the direct evidence of Petitioner's guilt as to the two offenses for which he was tried, or the value of the other 404(b) evidence.

Additionally, the documents attached to Petitioner's motion do not support his claims of inadequate investigation by Ms. Allison. Exhibit B to Petitioner's motion, a letter to him from his state court counsel, shows that Ms. Allison not only contacted counsel, but that in response to Ms. Allison's request, counsel faxed her the discovery related to the July 2006 incident. See [Doc. No. 1-3]. Exhibit C, upon which Petitioner also relies to support this claim, contains, *inter alia*, motions to suppress filed by state court counsel and interviews with the officer who purchased the crack from Petitioner and who consistently reported that he immediately recognized Petitioner as the seller of the crack. See [Doc. No. 1-4]. While Petitioner argues that he was in custody on the night in question, he has not produced evidence establishing that fact. In sum, Petitioner has produced no evidence disproving the officer's sworn testimony that he bought crack cocaine from Petitioner in an undercover capacity on the night in question and no evidence that any investigation by Ms. Allison could have disproven that testimony. Even if it could have, however, as set forth above, the Fourth Circuit has already held that there is no reasonable probability that

Petitioner would have been acquitted. Thus, Petitioner fails to show ineffective assistance of counsel.

**2. Petitioner's contention that Ms. Allison provided deficient representation in introducing Petitioner's prior felony record during direct examination.**

Petitioner next argues that trial counsel was ineffective because she introduced Petitioner's prior felony record during his direct examination, rather than first moving to keep that record out. Although Petitioner asserts that the decision to introduce his prior convictions without first seeking to have them excluded could not have been strategic, there is no reason to believe that this Court would have excluded those convictions which were properly admissible under Federal Rule of Evidence 609(a)(1). See United States v. Leon, 4 F. App'x 341, 347 (9th Cir. 2001) (unpublished) (rejecting ineffective assistance of counsel claim based on counsel's admission of prior convictions on direct examination of defendant without seeking their exclusion, concluding that this strategy was "well within the ambit of reasonable trial strategy"). Accordingly, Petitioner cannot show that counsel's failure to seek to exclude evidence of these convictions prejudiced him, and his claim of ineffective assistance of counsel fails.

**3.    Petitioner's contention that Ms. Allison provided deficient representation in failing to challenge Government counsel's characterization of Petitioner's prior convictions in his cross-examination.**

In his next claim of ineffective assistance of counsel, Petitioner asserts that Ms. Allison should have objected to certain of Government counsel's questions of him during his cross-examination.  Petitioner first argues that Ms. Allison should have objected when Government counsel asked him whether he had admitted to selling crack cocaine in the past and whether he had been convicted of selling crack cocaine.  Petitioner complains that he had not been convicted of selling cocaine.  Contrary to this contention, however, Petitioner <u>has</u> admitted to several prior drug-trafficking offenses, including offenses for possession with intent to sell or deliver cocaine and maintaining a vehicle or dwelling for the distribution of controlled substances.  [<u>See</u> Criminal Case. No. 1:07-cr-00056, Doc. 42 at 116-17].  Thus, the question was not misleading, and to the extent that Government counsel failed to qualify her question with an acknowledgment that the convictions were for possession with intent to sell, rather than selling, Petitioner himself made that clarification in his response to the questions.  [<u>Id.</u> at 125].

Petitioner also argues that Government counsel improperly asked numerous questions about his January 8, 2001, convictions for kidnaping, robbery, possession with intent to deliver cocaine, and maintaining a dwelling place for the keeping of a controlled substance, noting that these were consolidated for sentencing. [Id. at 116-17]. That these convictions were consolidated for sentencing, however, does not mean that they were offenses that were committed on the same date, as part of the same course of conduct. More importantly, Government counsel did not dwell unnecessarily or improperly on these convictions, simply asking a series of questions about them that spanned less than three pages of the trial transcript. [Id.].

Petitioner also contends that Government counsel improperly asked him about his religious affiliation. Although Government counsel asked Petitioner whether he had a gang affiliation and asked him who the Soldiers of Allah were, those questions were not improper and Petitioner was free to answer, as he did, testifying that he was a practitioner of Islam. [Id. at 120-21]. Having identified no questions by Government counsel that were improper, Petitioner has failed to show that Ms. Allison provided deficient representation in failing to object to those questions. Additionally, in light of the overwhelming evidence against Petitioner, there is no

reasonable probability Petitioner would have been acquitted even if Ms. Allison had objected. In sum, this ineffective assistance of counsel claim is without merit.

### 4. Petitioner's contention that Ms. Allison provided deficient representation in failing to challenge the basis for Petitioner's ban from public housing.

Petitioner next asserts that Ms. Allison was ineffective for failing to challenge the testimony of a public housing official that Petitioner was banned from Asheville public housing because the criminal charge that purportedly supported the ban was later dismissed. Read fairly, however, the testimony of David Nash, the Housing Authority employee, was offered by the Government to prove that Petitioner had, in fact, been banned from public housing. [Id. at 86]. Beyond stating that the ban was based on an incident occurring on August 10, 2006, Mr. Nash did not testify in any detail about the incident that resulted in Petitioner's ban from public housing, nor did the Government rely in any manner on the truth of the information provided to the Housing Authority to support its decision to ban Petitioner. [Id.]. Whether the incident that resulted in his banning in fact occurred or was criminal, therefore, was not before the jury, and there is no reasonable probability that the result of the proceedings would have been different if

Ms. Allison had challenged this testimony.   For these reasons this claim fails.

**5.     Petitioner's contention that Ms. Allison provided deficient representation in failing to provide evidence supporting the motion for a psychiatric examination.**

Petitioner next argues that Ms. Allison improperly failed to investigate his mental health history and failed to support her motion for a psychiatric examination with records that would have shown that he did not intend to distribute the cocaine he possessed on March 27, 2007.  All of the records submitted by Petitioner to support this argument, however, are from 1994 and relate to his diagnosis of oppositional or bi-polar disorder.  [Docs. 1-6; 1-7].  None of the records submitted suggest that he lacked the requisite intent to distribute the cocaine he discarded as he was fleeing police officers on the date of his offense, nor do they tend to show that he was incompetent to assist in his own defense on the date of trial.   Having submitted no evidence that Ms. Allison could have used to support his motion for a psychiatric examination, this claim fails.

**6.  Petitioner's contention that Ms. Allison provided deficient representation in failing to challenge the admissibility of the prior bad acts evidence relating to a seizure of an ounce of cocaine on March 17, 2007.**

Petitioner next asserts that Ms. Allison failed to challenge the Government's Rule 404(b) notice as based on a "complete misrepresentation of the facts," stating further that there was insufficient evidence to support the conclusion that Petitioner was responsible for the bag of crack cocaine found in the McDonald's bag near the automobile where officers encountered Petitioner on March 17, 2007. According to Petitioner, if Ms. Allison had challenged this notice and the admissibility of the evidence related to this incident, this Court would have held the evidence inadmissible.

Petitioner's argument on this point is very similar to his ineffective assistance of counsel claim based on the admission of the evidence relating to his July 2006 sale of four rocks of crack cocaine to an undercover officer. This claim must fail because the Court of Appeals has already held that even if the admission of this evidence was improper, Petitioner was not prejudiced. "In light of the considerable evidence of [Petitioner's] guilt," the admission did not affect the outcome of the proceedings. <u>Jeffries</u>, 304 Fed. App'x at 232. Because, at most,

Petitioner's claim relates to the admission of this evidence and the Fourth Circuit has already held that its admission did not affect the outcome of the proceedings, he cannot show that in the absence of the ineffective assistance of counsel he alleges, he would have been acquitted.

Additionally, the premise of Petitioner's argument is that fingerprints were found on the McDonald's bag and therefore the police officer lied during the trial when he testified that no discernible fingerprints were found on the bag. [See Criminal Case. No. 1:07-cr-00056, Doc. 42 at 43, 44]. The evidence submitted by Petitioner as Exhibit F, however, does not support his statement that fingerprints were found on the bag. [See Doc. 1-8]. The initial report by the fingerprint examiner indicated that, after treating the bag with a solution and allowing it to dry, "it appeared that there was potential for further results." [Id. at 2]. The next day, however, the fingerprint examiner reported that after applying a solution in an attempt to enhance whatever fingerprints might be there, there were "negative results." [Id. at 1]. In interpreting these reports, Petitioner suggests that "negative results" means that fingerprints were found but that they did not match Petitioner. Read fairly, however, this report indicates that the initial analysis revealed the possibility of fingerprints and that, while the officers intended to compare any potential fingerprints with Petitioner's, the

examiner was ultimately unable to identify <u>any</u> fingerprints. There is no statement in the report indicating that a comparison of fingerprints was ever conducted, nor is there any evidence to support Petitioner's claim that the officer lied under oath when he testified that no fingerprints were found. Having shown neither deficient performance nor prejudice regarding this issue, this claim fails.

**7. Petitioner's contention that Ms. Allison provided deficient representation in failing to seek a downward variance sentence.**

Petitioner argues that Ms. Allison provided deficient representation in failing to argue in favor of a downward variance sentence. Petitioner relies in part on his assertion that the crack cocaine found in the McDonald's bag did not belong to him. He suggests this should negate the effect of his designation as a career offender. As set forth above, however, there is ample evidence to support the conclusion that the cocaine in question <u>did</u> belong to Petitioner. Even if it did not belong to Petitioner, however, he cannot show that there is a reasonable probability that had Ms. Allison requested a downward variance, the Court would have granted that request. The evidence at trial established Petitioner's continued disrespect for and refusal to abide by the law, as well as the Asheville Housing Authority's decision to ban him from public housing properties. Within a

period of ten days, officers had three encounters with Petitioner at a public housing complex, finding cocaine or crack cocaine either on his person or near his person on each occasion. Additionally, Petitioner had a lengthy criminal history that included kidnaping, larceny, drug-trafficking offenses, and robbery. In light of Petitioner's extensive criminal history and the nature and circumstances of the offense, as well as his disrespect of the law, he cannot show that there is a reasonable probability that had he moved for a downward variance sentence, the Court would have imposed a below-Guidelines sentence. Accordingly, this claim fails.

**C.    Petitioner's Claim that He Was Denied the Sixth Amendment Right of Counsel at his Federal Trial Because the Attorney Who Was Appointed to Represent Him in His State Court Trial Was not Present in Petitioner's Federal Trial**

As noted previously, during Petitioner's trial in this Court, the Government presented evidence regarding an incident from July 21, 2006, in which Petitioner sold four pieces of crack cocaine to an undercover officer. State charges were subsequently brought against Petitioner based on the July 21, 2006, incident. The Government presented testimony regarding the July 2006 drug transaction under Rule 404(b). Petitioner contends that his Sixth Amendment right to counsel was violated in his trial in this Court because his state court counsel who represented him on the

state court charges was not present in Petitioner's trial in this Court on the federal charges. This claim is procedurally barred because Petitioner failed to raise this issue either at trial or on direct appeal, and he has failed to show cause and prejudice or that failure to consider this claim would result in a miscarriage of justice. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal."). In any event, Petitioner's claim that he was denied the Sixth Amendment right to counsel is without merit. Petitioner was represented by counsel at all times during the proceedings before this Court, and he cites no authority for the proposition that he was entitled to have counsel from his state court proceedings present during his trial in this Court. In sum, this claim is procedurally barred and without merit.

## D. Petitioner's Simmons Claims

### 1. Section 841/851 Enhancement

Section 841(b)(1)(C) of Title 21 provides for a statutory maximum sentence of 20 years in prison upon conviction of any drug-trafficking offense proscribed by § 841(a) involving a Schedule II controlled substance. See 21 U.S.C. § 841(b)(1)(C). Additionally, this section increases the statutory maximum to 30 years in prison for "any person

[who] commits such a violation after a prior conviction for a felony drug offense has become final." Id. "Felony drug offense" includes "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances." Id. § 802(44). Under the Fourth Circuit's decision in Simmons, a prior drug-trafficking conviction only qualifies as a "felony drug offense" if the petitioner could have received a sentence of more than one year under North Carolina's Structured Sentencing Act. See Simmons, 649 F.3d at 247.

Here, Petitioner committed the possession-with-intent-to-distribute and felon-in-possession offenses on March 27, 2007. Before this date, he had a final drug felony conviction for possession with intent to manufacture, sell or deliver cocaine and for maintaining a vehicle for keeping or selling cocaine, for which he was sentenced to 10 to 12 months in prison. According to the state-court judgment related to this offense, the offense of conviction was a Class H felony, and Petitioner had a prior record level of III. Under North Carolina General Statutes § 15A-1340.17, Petitioner could not have received a sentence of greater than 12 months in prison and,

under <u>Simmons</u>, this conviction does not qualify as a prior felony drug offense.[4] [<u>See</u> Doc. 68: State Court Judgment].

Although Petitioner was also convicted in state court on April 19, 2007, of a felony drug offense for which he was sentenced to 13 to 16 months in prison and although that conviction was later affirmed on appeal, he committed the offenses in this case approximately three weeks <u>before</u> he was convicted of that felony drug offense. As set forth above, § 841(b)(1)(C) only increases the statutory maximum based on prior felony drug offenses that became final <u>before</u> the petitioner committed the offense of conviction. Because the offenses in this case were committed before the April 19, 2007, conviction, this conviction also cannot support an enhanced statutory maximum. In its response, the Government states that it has not identified any other prior felony drug offenses that this Court could have relied on in sentencing Petitioner above the 20-year statutory maximum that applies to offenses falling within § 841(c)(1)(C). The Government states that it is therefore constrained to concede that Petitioner's 264-month sentence as to Count One exceeds the applicable statutory

_____

[4] Petitioner could have received a sentence of up to 15 months for a Class H felony with prior record level of III if the State had given notice of and proven aggravating factors. N.C. Gen. Stat. §15A-1340.17. There is nothing in the record, however, to show that the State did so. [Doc. 68].

maximum of 240 months. Further, because this sentence amounts to an illegal sentence, the Government concedes that its imposition results in a miscarriage of justice that should be corrected by this Court. Accordingly, the Government requests that this Court vacate Petitioner's sentence as to Count One and resentence the Petitioner. The Government's point is well taken. Because Petitioner was given was given a sentence above the correct statutory maximum he is entitled to have his sentence vacated and to be resentenced within the appropriate statutory range.

## 2. Career Offender Enhancement

Sentencing Guidelines § 4B1.1(a) provides that a defendant is a career offender if: (1) he was at least 18 years old at the time of the offense of conviction; (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A "crime of violence" is defined to include, inter alia, kidnaping and robbery, while "controlled substance offense" is defined to include an offense under either federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits, inter alia, the possession of a controlled substance with intent to distribute. Id. § 4B1.2(b) and § 4B1.2 cmt. n.1. Finally, pertinent to

Petitioner's motion, "prior felony conviction" is defined as any prior adult or state conviction for an offense punishable by death or imprisonment for a term exceeding one year.  Id. § 4B1.2 cmt. n.1.

Here, in response to Petitioner's contention that he should not have been designated as a career offender, the Government concedes that, in light of Simmons, Petitioner did not have two prior felony offenses sufficient to support his classification as a career offender under U.S.S.G. § 4B1.1. The Government further states, however, that because Petitioner's claim of sentencing error is non-constitutional, he has not shown that the error resulted in a miscarriage of justice.  Here, the Government argues, and this Court agrees, that because Petitioner was sentenced within the statutory maximum sentence to which he was subject even if he were not considered to be a career offender, he is not entitled to relief under § 2255 based on his career offender designation.[5]  See United States v. Powell, 691 F.3d 554, 562 n.1 (4th Cir. 2012).

---

[5] Furthermore, as the Government notes, the Fourth Circuit Court of Appeals made clear in United States v. Pettiford that "[t]o succeed on actual innocent grounds, . . . 'a petitioner must demonstrate actual factual innocence of the offense of conviction,'" and "'this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent.'"  612 F.3d 270, 282 (4th Cir. 2010) (quoting United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999)).  Here, Petitioner cannot show that he is actually innocent of the offenses supporting the career-offender designation.

# O R D E R

**IT IS, THEREFORE, ORDERED THAT:**

1.  Petitioner's Partial Motion for Summary Judgment [Doc. 70] and his Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] and his Supplemental Motion to Vacate [Doc. 78] are **GRANTED IN PART** in that Petitioner's sentence as to Count One is **VACATED** and Petitioner shall be resentenced as to that Count. In all other respects, said Motions [Doc. 1, 70, 78] are **DENIED**;

2.  Petitioner's Motion for Leave to File Motions to Reconsider and Motion to Recuse [Doc. 73], Petitioner's Motion for Permission to File [Doc. 80], and Petitioner's Motion for Leave to Amend [Doc. 86] are **DENIED**;

3.  Petitioner's Motion to Appoint Counsel [Doc. 71] and Petitioner's Motion for Leave of Court to file for a "Prompt Hearing" [Doc. 77] are **DENIED** as moot;

4.  The Government's Motion for Extension of Time to File [Doc. 88] is **GRANTED**;

5.  The United States Marshal shall have the Defendant present in Asheville, North Carolina, for the April, 2014 sentencing term;

6.    The Clerk of Court shall calendar this matter for that term; and

7.    The United States Probation Office shall provide the Court with a supplemental presentence report in advance of the resentencing hearing.

The Clerk of Court is directed to provide notification and/or copies of this Order to the United States Attorney, counsel for the Petitioner, the United States Marshals Service, and the United States Probation Office.

**IT IS SO ORDERED.**

Signed: January 24, 2014

Martin Reidinger
United States District Judge